IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FLOYD CRAWFORD, on behalf of himself and all others similarly situated, | ) ) ) | Civil Action No. 1:15-cv-03027-SCJ |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| THE REFINISHING TOUCH, INC., | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

### PLAINTIFF FLOYD CRAWFORD'S MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE TO PUTATIVE CLASS MEMBERS

### I.    PRELIMINARY STATEMENT

Plaintiff Floyd Crawford and the "opt-in" collective action plaintiffs that have filed their consent to join this putative collective action (collectively "Plaintiffs") are individuals that worked for Defendant The Refinishing Touch ("TRT" or "Defendant") as "furniture repairers" within the last three years. The term "furniture repairer", as used herein, includes those individuals that performed furniture upholstery, repair, and/or refinishing for Defendant at any time in the last three years, while being treated as independent contractors.

With this motion, Plaintiff respectfully requests that the Court conditionally certify this matter as a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") so that notice can be sent to all members of the class.

In support of Plaintiff's motion for conditional certification, Plaintiff shows that the members of the proposed class of furniture repairers: (1) were paid in the same manner, i.e. on a piece rate basis without an overtime premium for work performed in excess of (40) hours in given workweeks; (2) performed the same primary duty of repairing furniture, specifically upholstering and/or refinishing sofas, chairs, and other furniture for Defendant's commercial clients; (3) regularly worked in excess of (40) hours in given workweeks without receiving overtime compensation, calculated at one and one-half times their regular rate, for all hours worked over 40 in such weeks; and (4) were subjected to the same unlawful policy of Defendant, i.e. Defendant's misclassification of the furniture repairers as independent contractors and paying the employees on a piece rate basis without an overtime premium for overtime hours.

At this early stage of the litigation where discovery has yet to occur the Court need only *conditionally* certify this matter as a collective action in order to provide notice to putative class members who may elect to "opt-in" to

Plaintiff's action as required to toll the statute of limitations as to such putative "opt-in" plaintiffs' claims.

To make a showing that Plaintiff and putative class members are *similarly situated* at the conditional certification stage, Plaintiff need only make a minimal showing that Plaintiff and members of the proposed class are: (1) similarly situated with respect to their job requirements and pay provisions; and (2) that there are other employees that wish to opt-in to Plaintiff's action.

There is ample evidence before the Court showing that the members of proposed class of furniture repairers are similarly situated in terms of their job requirements and pay provisions and the three furniture repairers that have thus far "opted-in" to Plaintiff's lawsuit shows that there are other employees interested in joining Plaintiff's action.  As noted above, the putative class is comprised of furniture repairers that worked for Defendant TRT at any time in the last three years, while being treated as an independent contractor.

Based on the evidence provided by Plaintiff, Plaintiff respectfully requests that the Court conditionally certify the suit as a collective action and Order: (1) Defendant TRT to provide a list of all putative class members, including first and last name, last-known address and phone number, Email address, dates of employment, last four digits of social security number and date of birth; and (2)

permit Plaintiff to provide putative class members with the proposed Notice of this action, attached hereto as Exhibit F.

## II.   FACTS

### A.   OVERVIEW OF THE REFINISHING TOUCH'S BUSINESS AND THE FURNITURE REPAIRER POSITION

TRT is in the business of repairing/refinishing furniture for commercial clients, e.g. hotels, universities, and federal government facilities.[1] TRT does not provide its services to the general public and it deals exclusively with commercial clients.[2] As set forth on the homepage Defendant's website, "The Refinishing Touch™ is a world leader in providing environmentally safe, on-site Furniture Refinishing, on-site Upholstery and on-site Armoire Modification to Hotels, Universities and Government Facilities."[3]

At any given time, TRT has approximately 40-50 furniture repairers working for the company, while being treated as independent contractors and paid on a piece rate basis.[4] TRT's furniture repairers perform work at TRT's shop, as well as sites located in the metropolitan Atlanta, Georgia area and beyond.[5] TRT's

---

[1] (Decl. of Floyd Crawford, ¶ 4, attached hereto as "Exhibit A").
[2] (Crawford Decl., ¶ 4).
[3] (Exhibit B –Screen Shots of Content from TRT's Website, at Crawford00095).
[4] (Crawford Decl., ¶¶ 4, 5, 8, 9); (Decl., of William Byrd, ¶¶ 5, 8, 9, attached hereto as "Exhibit C").
[5] (Crawford Dec., ¶ 4).

4

furniture repairers perform the same job duties, specifically upholstering and/or refinishing sofas, chairs, and other furniture for TRT's commercial clients.[6]

During the last three years, TRT has employed numerous furniture repairers and failed to pay them properly calculated overtime compensation for hours worked in excess of (40) hours in given workweeks, based on TRT's policy of classifying the class as independent contractors and paying the workers on a piece rate basis, without an overtime premium for hours worked in excess of 40 in a workweek.[7]

**B.   THE PROPOSED CLASS OF FURNITURE REPAIRERS HAS THE SAME JOB REQUIREMENTS AND PAY PROVISIONS, AND REGULARLY WORKED IN EXCESS OF 40 HOURS IN GIVEN WORKWEEKS**

Plaintiff and two of the opt-in plaintiffs occupied the furniture repairer position for a lengthy period during the last three years.[8] Plaintiff and members of the putative class of furniture repairers often worked alongside each other performing furniture repair at TRT's shop, and the properties of TRT's customers.[9]

---

[6] (Crawford Decl., ¶¶ 5, 6);

[7] TRT's physical office is located at 9350 Industrial Trace, Alpharetta, Georgia, 30004. Defendants' furniture repairers perform work at Defendants' shop, as well as sites located in the metropolitan Atlanta, Georgia area and beyond. (Crawford Decl., ¶ 4). The entire class of furniture repairers worked for TRT out of its Alpharetta, Georgia office. *Id.*

[8] (Byrd Decl., ¶ 2 - Byrd worked for TRT as a furniture repairer from April 2014 to April 2015); (Crawford Decl., 2 – Crawford held the furniture repairer position from April 2014 – April 2015); (Decl. of Justin Prosser, ¶2, attached hereto as "Exhibit D" -  Prosser worked for TRT as a furniture repairer from May 2014 – March 2015).

[9] (Crawford Decl. ¶¶ 4, 5, 7).

During the last three years, TRT's furniture repairers regularly worked over 40 hours in given workweeks. In particular, Defendant's furniture repairers typically worked 60, or more hours each week, excluding compensable drive time to out of state jobs.[10] Plaintiff and two of the opt-in plaintiffs have provided detailed examples of the hours they worked on particular jobs under the direction of TRT supervisors.[11]

During the last three years, TRT's furniture repairers were paid solely on a piece rate basis for the work they performed.[12] For example, on an Alpharetta, Georgia job, opt-in plaintiff Byrd worked on sectional sofas and ottomans and was paid a piece rate of $22 for the work he performed on the ottomans, and a piece rate of $81 for sectional sofas, regardless of whether he was performing such work after having already worked 40 hours in the workweek. If Byrd's piece rate was $22 for completing an ottoman, he would receive that piece rate amount multiplied by the number of ottomans he completed in the week, without any regard to the number of hours he worked in the week.[13] For example, if Byrd completed 20 ottomans in the week, at a piece rate of $22, he would be paid $440, regardless of

---

[10] (Crawford Decl. ¶¶ 7, 10; (Byrd Decl,, ¶¶ 7, 10); (Prosser Decl., ¶¶ 7, 10, attached hereto as "Exhibit D"); (Decl. of Jonathan MuKunta, ¶¶ 7, 10, attached hereto as "Exhibit E").
[11] (Crawford Decl. ¶ 7); (Byrd Decl,, ¶ 7); (Prosser Decl., ¶ 7).
[12] (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).
[13] (Byrd Decl,, ¶ 9).

whether it took him 40 hours or 70 hours to complete the work.[14]  In other words, there was no premium paid for overtime hours.[15]  Plaintiff and three opt-in plaintiffs aver to Defendant's universal pay practice of paying piece rate compensation to the class of furniture repairers, without an overtime premium for overtime hours.[16]

In sum, the furniture repairers: (1) were paid in the same manner, i.e. on a piece rate basis without time and a half overtime compensation for work performed in excess of (40) hours in given workweeks[17]; (2) performed the same primary duty of furniture repair, specifically upholstering and/or refinishing furniture[18]; (3) regularly worked in excess of (40) hours in given workweeks without receiving overtime compensation, calculated at one and one-half times their regular rate, for all hours worked over (40) in such weeks[19]; and (4) were subjected to the same unlawful policy of Defendant, i.e. Defendant's misclassification of the furniture repairers as independent contractors and refusing to pay an overtime premium to the class of piece rate workers.[20]

---

[14] (Byrd Decl,, ¶ 9).
[15] (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).
[16]  (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).
[17] (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).
[18] (Crawford Decl. ¶¶ 5, 6; (Byrd Decl,, ¶¶ 5, 6); (Prosser Decl., ¶¶ 5, 6); (MuKunta Decl., ¶¶ 5, 6).
[19] (Crawford Decl. ¶¶ 7-9; (Byrd Decl,, ¶¶ 7-9); (Prosser Decl., ¶¶ 7, 8); (MuKunta Decl., ¶¶ 7, 8).
[20] (Crawford Decl. ¶¶ 7-18; (Byrd Decl,, ¶¶ 7-15); (Prosser Decl., ¶¶ 7-15); (MuKunta Decl., ¶¶ 7-17).

As discussed in more detail in Sec. I (C), below, Plaintiffs have also provided ample support for their contention that the proposed class is comprised of employees of TRT that were improperly classified by Defendant as independent contractors.[21]

### C.   DEFENDANT'S FURNITURE REPAIRERS WERE SUBJECTED TO THE SAME UNLAWFUL POLICY OF INDEPENDENT CONTRACTOR MISCLASSIFICATION

During the last three years, TRT's treated all of its furniture repairers as "independent contractors", and paid then on a piece rate basis, without overtime compensation calculated at one and one half times their regular rate for hours they worked in excess of 40 in workweeks.[22]

The relevant facts clearly demonstrate that TRT's furniture repairers were "employed" by Defendant and improperly classified as independent contractors.

In particular, during the last three years:

(1)  TRT furniture repairers were often subject to daily supervision of their work by TRT crew chiefs[23];

(2)  TRT furniture repairers did not hire, fire, or retain personnel to work on the jobs they performed for TRT, and, instead, regularly worked with other TRT furniture repairers under TRT's supervision[24];

---

[21] (Crawford Decl. ¶¶ 7-18; (Byrd Decl,, ¶¶ 7-15); (Prosser Decl., ¶¶ 7-15); (MuKunta Decl., ¶¶ 7-17).

[22] (Crawford Decl. ¶¶ 7-9); (Byrd Decl,, ¶¶ 7-9); (Prosser Decl., ¶¶ 7, 8); (MuKunta Decl., ¶¶ 7, 8).

[23] (Crawford Decl. ¶ 8).

[24] (Crawford Decl. ¶¶ 8, 13); (Byrd Decl,, ¶ 8); (Prosser Decl., ¶ 8, 11); (MuKunta Decl., ¶¶ 8, 11).

(3)  TRT furniture repairers had their job duties and work schedules assigned to them by TRT[25];

(4)  TRT furniture repairers were expected to wear a TRT company tee shirt on job sites[26];

(5)  TRT furniture repairers were provided tools needed to complete their job duties[27];

(6) TRT furniture repairers had no opportunity for profit or loss in their position as furniture repairers because they simply received piece rate compensation for completing the work TRT assigned to them[28];

(7)  TRT's furniture repairers perform work that is central to, and, in fact, is the core service TRT provides to its customers [29];

(8) TRT furniture repairers were economically dependent on TRT and the wages they received from the company[30]; and

(9) TRT furniture repairers, in many cases, worked for the company for a lengthy period of time[31].

Additionally, Defendant's furniture repairers are hired by the employer in the usual employee fashion; specifically they complete an "employment application" for the position which is available on TRT's website, along with a job

---

[25] (Crawford Decl. ¶¶ 7, 8); (Byrd Decl,, ¶ 7); (Prosser Decl., ¶ 7).
[26] (Crawford Decl. ¶ 16); (Byrd Decl,, ¶ 8); (Prosser Decl., ¶ 13); (MuKunta Decl., ¶ 15).
[27] (Crawford Decl. ¶ 14).
[28] (Crawford Decl. ¶ 17) ; (Byrd Decl,, ¶ 14); (Prosser Decl., ¶ 14); (MuKunta Decl., ¶ 16).
[29] (Crawford Decl. ¶ 15) ; (Byrd Decl,, ¶ 12); (Prosser Decl., ¶ 12); (MuKunta Decl., ¶ 14).
[30] (Crawford Decl. ¶ 18) ; (Byrd Decl,, ¶ 15); (Prosser Decl., ¶ 15); (MuKunta Decl., ¶ 17).
[31] (Crawford Decl. ¶¶ 2, 18); (Byrd Decl,, ¶¶ 2, 15); (Prosser Decl., ¶¶ 2, 15); (MuKunta Decl., ¶ 17).

posting for the positions.[32] The totality of the circumstances clearly demonstrates that the class of furniture repairers consists of statutory employees of TRT.

### D.   PLAINTIFF'S PROPOSED CLASS OF FURNITURE REPAIRERS

As set forth above, Plaintiff seeks conditional certification to provide notice to furniture repairers that worked for TRT at any time in the last three years. At any time, Defendant employs approximately 40-50 furniture repairers that are treated as independent contractors.[33] TRT's physical office is located at 9350 Industrial Trace, Alpharetta, Georgia, 30004, i.e. the class is confined to a relatively small group of workers hired out of the same Alpharetta, Georgia office.[34]

### III.   ARGUMENT AND CITATION TO AUTHORITY

### A.   THE STANDARD FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION IS LENIENT, AND COURTS ROUTINELY ORDER CONDITIONAL CERTIFICATION TO SERVE THE INTEREST OF JUDICIAL ECONOMY AND EMPLOYEES' CAPACITY TO ENFORCE WORKPLACE RIGHTS

In cases such as this action where numerous employees share a common cause of action against their employer under the FLSA, Congress included a collective action provision in the statute under 29 U.S.C. § 216(b) so that an

---

[32] (Exhibit B, at Crawford00115, 00118 – "Careers" page on Defendant's website identifying open positions for "upholsterers/craftsman" and "furniture refinishers". The job postings on the "Careers" page link to an employment application entitled "The Refinishing Touch Application for Employment" (Exhibit B, at Crawford00103-00104).
[33] (Crawford Decl. ¶ 5); (Byrd Decl,, ¶ 5); (Prosser Decl., ¶ 5); (MuKunta Decl., ¶ 5).
[34] (Crawford Decl. ¶ 4).

employee can bring  suit on behalf of  himself and all other  "similarly situated" employees.[35]  The purpose of the collective action procedure is to allow plaintiffs to more effectively enforce their workplace rights and to promote judicial efficiency:

> "A collective action allows [employees] the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity."[36]

**B.    TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION, PLAINTIFFS NEED ONLY MEET A LENIENT STANDARD SHOWING THAT MEMBERS OF THE PROPOSED CLASS HAVE SIMILAR JOB REQUIREMENTS AND PAY PROVISIONS, AND THAT OTHER EMPLOYEES WISH TO "OPT-IN" TO THE ACTION**

The Eleventh Circuit has endorsed a two-step approach for determining whether the members of a proposed class are "similarly situated" for purposes of collective action certification. *Hipp*, 252 F.3d at 1217-18.

In the first step, known as the "notice stage," the Court determines whether to grant ***conditional*** certification by asking whether the members of the proposed

---

[35] 29 U.S.C. § 216(b); *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989); *Hipp v. Liberty Nat'l. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Clincy v. Galardi S. Enters., Inc.*, 2010 WL 966639, *1 (N.D. Ga. 2010); *Riddle v. Suntrust Bank*, 2009 WL 3148768, *1 (N.D. Ga. 2009); *Scott v. Heartland Home Fin., Inc.*, 2006 WL 1209813, *1 (N.D.Ga. May 3, 2006); *Davis v. Precise Commc'ns Servs., Inc.*, 2009 WL 812276, *2 (N.D. Ga. 2009); *Cash v. Gwinnett Sprinkler Co., Inc.*, 2008 WL 5225874, *1 (N.D. Ga. 2008); *Kreher v. City of Atlanta, Ga.*, 2006 WL 739572, *2 (N.D. Ga. 2006).

[36] *Hoffman La-Roche* 493 U.S. at 170; *see also Clincy*, 2010 WL 966639 at *3 ("certification of collective actions in an FLSA case is based on a theory of judicial economy"); *Cash*, 2008 WL 5225874 at *1 (internal quotations omitted) ("Collective actions under the FLSA allow the judicial system to efficiently resolve the claims of multiple plaintiffs in one proceeding where those claims contain common issues of law and fact arising from the same alleged discriminatory activity").

class are sufficiently alike that they should be notified of the action and given the opportunity to opt-in.[37]   Courts start with the first-step notice inquiry in cases where, as here, discovery has not been completed.[38]

Courts generally rely on a plaintiff's pleadings and supporting declarations to determine whether the plaintiffs have met their evidentiary burden at the first stage.[39]

> "At the first stage, which is also called the "notice stage," the district court determines whether there are other similarly situated individuals who wish to opt-in. If there are, the court conditionally certifies the class. Because the court typically relies on the pleadings and affidavits at this stage, the standard for conditional certification is "fairly lenient."" *Myrick v. Fulton County*, 2010 U.S. Dist. LEXIS 84145, 1-3 (N.D. Ga. 2010) (internal citations omitted).

In particular, to obtain conditional certification Plaintiff need only make a minimal showing that the proposed class is: (1) "similarly situated" with respect to their job requirements and with regard to their pay provisions"; and (2) that "there are other employees of the…employer who desire to "opt-in.""[40]   With

---

[37] *See Clincy*, 2010 WL 966639 at *1; *Scott*, 2006 WL 1209813, at *2; *Davis*, 2009 WL 812276 at *2; *Cash*, 2008 WL 5225874 at *1.
[38] *See Scott*, 2006 WL 1209813, at *2; *Cash*, 2008 WL 5225874 at *1; *Kreher*, 2006 WL 739572 at *2.
[39] *Myrick v. Fulton County*, 2010 U.S. Dist. LEXIS 84145, 1-3 (N.D. Ga. 2010).
[40] *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

respect to job requirements, "plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members."[41]

As to pay provisions, plaintiffs are not required to prove their claim of an unlawful policy, but rather, plaintiffs need only make a "rudimentary showing" that there is a basis for their claims.[42]

> *Mainor v. Lazer Spot, Inc.*, 2011 U.S. Dist. LEXIS 151990 (N.D. Ga. 2011) (*quoting Scott v. Heartland Home Finance, Inc.*, No. 1:05-CV-2812-TWT, 2006 U.S. Dist. LEXIS 28839, 2006 WL 1209813, at *3 (N.D. Ga. 2006) ("At the notice stage, "variations in  specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered").

Finally, the requirement that there must be similarly situated employee(s) of the employer interested in joining the action is typically met where one or more members of the putative class have "opted-in" to the action.[43]

### C.   THE COURTS AUTHORIZE PLAINTIFFS TO ISSUE NOTICE TO CLASS MEMBERS UPON GRANTING CONDITIONAL CERTIFICATION

Due to the "opt-in" requirement of FLSA collective actions, courts recognize the importance of employees obtaining "accurate and timely notice

---

[41] *Grayson*, 79 F.3d at 1096 (internal citations and quotations omitted); *see also Riddle,* 2009 WL 3148768, at *1; *Scott*,   2006 WL 1209813 at *2; *Kreher*, 2006 WL 739572 at *2.

[42] *Scott*, 2006 WL 1209813 at *2

[43]  *Guerra v. Big Johnson Concrete Plumbing, Inc.*, No. 05-14237, 2006 U.S. Dist. LEXIS 58484, 2006 WL 2290512, at *4 (S.D. Fla. 2006) (certifying collective action class where only one individual had opted-in); *Santiago v. Mid-South Painting, Inc.*, 2011 U.S. Dist. LEXIS 85252 (S.D. Fla. 2011) (internal citations omitted) (in granting conditional certification without a single "opt-in" plaintiff, the court opined "courts within this circuit have determined that evidence of "a common payroll policy or scheme" is sufficient to "establish[] there [are] other employees desiring to opt-in . . . .").

concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170.

Accordingly, upon granting conditional certification, courts generally order that notice of the action be sent to all prospective class members to give them an opportunity to opt-in to the class.[44] To facilitate the issuance of notice, courts also require employers to provide to plaintiffs the names and contact information of all potential members of the collective class. *Kreher v. City of Atlanta*, 2006 U.S. Dist. LEXIS 23094 (N.D. Ga. 2006).

### D.   PLAINTIFF HAS MET THE LENIENT CONDITIONAL CERTIFICATION STANDARD WITH EVIDENCE SHOWING THAT THE PROPOSED CLASS HAS SIMILAR JOB REQUIREMENTS AND PAY PROVISIONS, AND THAT OTHER EMPLOYEES WISH TO JOIN PLAINTIFF'S ACTION.

As discussed, *supra*, Plaintiff's motion for conditional collective action certification is supported by four declarations, exhibits, and consent to join filings from three prospective opt-in plaintiffs, demonstrating that members of the proposed class of furniture repairers are: (1) similarly situated with respect to their job requirements and pay provisions; (2) there are other furniture repairers that wish to join Plaintiff's action; and (3) the entire class was subjected to the same unlawful policy of independent contractor misclassification and the payment of piece rate compensation without an overtime premium for overtime hours.

---

[44] *See Clincy*, 2010 WL 966639 at *4; *Riddle,* 2009 WL 3148768, at *4; *Cash*, 2008 WL 5225874 at *1.

### 1.   MEMBERS OF THE PROPOSED CLASS OF FURNITURE REPAIRERS ARE SIMILARLY SITUATED IN TERMS OF JOB REQUIREMENTS AND PAY PROVISIONS

As discussed, *supra*, at Sec. II (A) – (C), during the last three years, TRT has employed numerous furniture repairers and failed to pay them required overtime compensation for hours worked in excess of (40) in given workweeks.

As set forth in Sec. II (A), Plaintiff shows that the members of the proposed class of furniture repairers: (1) were paid in the same manner, i.e. on a piece rate basis without time and a half overtime compensation for work performed in excess of (40) hours in given workweeks[45]; (2) performed the same primary duty of primary duty of furniture repair, specifically upholstering and/or refinishing furniture[46]; (3) regularly worked in excess of (40) hours in given workweeks without receiving overtime compensation, calculated at one and one-half times their regular rate, for all hours worked over (40) in such weeks[47]; and (4) were subjected to the same unlawful policy of Defendant, i.e. Defendant's misclassification of the furniture repairers as independent contractors and refusing to pay an overtime premium to the class of piece rate workers[48].

---

[45] (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).
[46] (Crawford Decl. ¶¶ 5, 6) (Byrd Decl,, ¶¶ 5, 6); (Prosser Decl., ¶¶ 5, 6); (MuKunta Decl., ¶¶ 5, 6).
[47] (Crawford Decl. ¶¶ 7-9); (Byrd Decl,, ¶¶ 7-9); (Prosser Decl., ¶¶ 7, 8); (MuKunta Decl., ¶¶ 7, 8).
[48] (Crawford Decl. ¶¶ 7-18); (Byrd Decl,, ¶¶ 7-15); (Prosser Decl., ¶¶ 7-15); (MuKunta Decl., ¶¶ 7-17).

Plaintiffs' declarations and exhibits further demonstrate that members of the proposed class were employees of TRT improperly classified by Defendant as independent contractors.[49]

Plaintiff's evidence clearly suffices to show that members of the putative class of furniture repairers are similarly situated for purposes of first stage certification.[50]

**B.   THE PUTATIVE CLASS IS CLEARLY SIMILARLY SITUATED WITH RESPECT TO THE ISSUE OF TRT'S EMPLOYER STATUS AND LIABILITY**

**1.   THE PUTATIVE CLASS IS COMPRISED OF STATUTORY EMPLOYEES**

On July 15, 2015, the United States Department of Labor ("DOL") issued Administrator's Interpretation No. 2015-1 ("*Interpretation 2015-1*")[51], discussing and reaffirming the applicable standard for classification of workers as employees vs. independent contractors. *Interpretation 2015-1* ultimately consists of a recitation of well-established legal principles that have controlled employee classification for decades, coupled with a strong admonishment from the DOL to employers to stop misclassifying employees as independent contractors.

As noted in *Interpretation 2015-1*, "In order to make the determination

---

[49] (Crawford Decl. ¶¶ 7-18); (Byrd Decl,, ¶¶ 7-15); (Prosser Decl., ¶¶ 7-15).

[50] *Clincy v. Galardi S. Enters.*, 2010 U.S. Dist. LEXIS 22796 (N.D. Ga. Mar. 12, 2010) (internal citations omitted) ("Plaintiffs bear the burden of establishing that they are similarly situated with the group of employees they wish to represent. The burden on Plaintiffs, however, is not a heavy one…the standard is fairly lenient and Plaintiffs are not required to prove that they and the putative class members held identical positions, but only similar positions").

[51] (Exhibit H – *Interpretation 2015-1*).

whether a worker is an employee or an independent contractor under the FLSA, courts use the multi-factorial[52] "economic realities" test, which focuses on whether the worker is economically dependent on the employer or in business for him or herself."[53]

In issuing *Interpretation 2015-1*, the DOL correctly observes that in "applying the economic realities test in view of the expansive definition of "employ" under the Act, most workers are employees under the FLSA". *Interpretation 2015-1*, at p. 2.

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. 203(d). The FLSA's definition of "'employ' includes to suffer or permit to work." 29 U.S.C. 203(g). An "entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor*, 88 F.3d at 92.

Plaintiff has provided at an abundance of evidence at this early stage

---

[52] See *Interpretation 2015-1* (identifying the factors guiding the determination of employer status under the FLSA); see also *Antenor* 88 F.3d 925, 929, 932–37 (identifying factors considered for determining joint employer status under the FLSA).

[53] *Interpretation 2015-1*; see also *Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 268 (11th Cir. 2011) (*quoting Antenor v. D & S Farms*, 88 F.3d 925, 929, 932–37 (11th Cir. 1996) ("[W]hether a party qualifies as a joint employer for liability purposes depends on whether 'as a matter of economic reality, the individual is dependent on the entity'")).

demonstrating that class members were economically dependent on TRT and that application of the traditionally considered multi-factor economic realities test to the putative class' working situation demonstrates the furniture repairers are employees of TRT.[54]

Plaintiff and the opt-in plaintiffs have provided evidence that members of the putative class were, *inter alia*, economically dependent on TRT, had no opportunity for profit or loss based on managerial skill as they simply received piece rate compensation for work they were assigned to complete by TRT, reported to TRT supervisors and were often subject to control and supervision of their work by TRT's management, worked for TRT for a lengthy duration of time, often worked alongside other TRT furniture repairers, and performed work that was central to TRT's business.[55]

Moreover, for purposes of first stage certification, Plaintiff need only provide evidence indicating there is a "colorable"[56] basis for the class' claims.

---

[54] Discussed at (Dkt. Entry 39-1, pp. 9 – 10).

[55] See Sec. II (B), *supra*. (Crawford Decl. ¶¶ 7-18; (Byrd Decl,, ¶¶ 7-15); (Prosser Decl., ¶¶ 7-15).

[56] *Owens v. Clear Wireless LLC*, 2014 U.S. Dist. LEXIS 29069, 4-8 (D. Minn. Jan. 3, 2014) (Noting that, in assessing whether to grant conditional certification, "the initial analysis involves the determination of whether plaintiffs have established a colorable basis for the claim that a class of similarly situated employees exists. The court need not make credibility determinations or findings of fact as to disputed evidence at this stage in the litigation, and class status is granted liberally at this time, largely because the court has minimal evidence available for properly analyzing class status issues").

In summary, Plaintiffs' declarations and other evidence demonstrate that members of the proposed class were employees of TRT and improperly classified by Defendant as independent contractors.  *Compare with*:

*Clincy v. Galardi S. Enters.*, 2010 U.S. Dist. LEXIS 22796 (N.D. Ga. 2010) (internal citations omitted) (conditionally certifying collective class comprised of adult entertainers that were allegedly misclassified as independent contractors by the defendant and opining that "Plaintiffs are not required to prove that they and the putative class members held identical positions, but only similar positions");

*Carrera v. UPS Supply Chain Solutions, Inc.*, 2011 U.S. Dist. LEXIS 34611 (S.D. Fla. 2011) (internal citations omitted) (granting conditional certification of nationwide class of drivers allegedly misclassified as independent contractors and noting that the "issue of whether the opt-in plaintiffs are properly classified as independent contractors or SCS's employees requires an individualized analysis of such factors as the nature and extent of SCS's control, the plaintiff's opportunity for profit or loss, the plaintiff's investment, whether the services required a special skill, the permanency of the relationship, and whether the service is an integral part of SCS's business…Many of the issues central to this determination can be resolved or addressed as part of a collective action and perhaps in a much more efficient manner than would otherwise be the case");

*Stevenson v. Great Am. Dream, Inc.*, 2013 U.S. Dist. LEXIS 114419, 4-5 (N.D. Ga. 2013) (*citing Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003)) (conditionally certifying class of nightclub entertainers allegedly misclassified as independent contractors and opining, "The Defendants argue that all of the entertainers who performed at Pin Ups are "independent contractors" rather than employees, and thus fall outside the ambit of the FLSA. However, the Plaintiffs only need to make a "colorable claim for relief" under the FLSA in

order for the Court to proceed to the two-tiered conditional certification analysis *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003)").

## 2.  THE PUTATIVE CLASS CONSISTS OF NON-EXEMPT PIECE RATE WORKERS ENTITLED TO OVERTIME COMPENSATION

The FLSA requires employers to compensate employees for hours worked over 40 per week at a rate not less than one and one-half times the regular rate. 29 U.S.C.S. § 207. "Where an employer pays an employee on a "piece-rate" basis, i.e. **by the job or by the product**, FLSA regulations establish a mathematical method for determining the proper overtime rate of pay and require that the employer pay such rate for each hour worked over forty per week." (emphasis added) *Hernandez v. City Wide Insulation of Madison, Inc*., 508 F. Supp. 2d 682, 2007 U.S. Dist. LEXIS 66478 (ED Wis Sept. 7, 2007) (*citing* 29 C.F.R. § 778.111). Employers cannot use a piece rate system to avoid paying employees the Federal minimum wage or overtime. *White v. Integrated Elec. Techs., Inc*., 2013 U.S. Dist. LEXIS 83298 (E.D. La. June 13, 2013).

Should Defendant attempt to disingenuously re-characterize its piece rate compensation as a "commission" and argue that members of the putative class fall within 29 U.S.C. § 207(i) ("207(i)") overtime exemption to certain commission paid employees of retail or service establishments, such an argument fails as a matter of law. To prove an employee fits within the narrowly construed 207(i) exemption, an

employer must show that (1) the employee works for a "retail or service establishment"; (2) the employee's regular rate of pay exceeds one and one-half times the minimum applicable hourly rate; and (3) more than half the employee's compensation for a representative period represents commissions on goods or services. 29 U.S.C. § 207(i). Here, TRT clearly cannot rely on the 207(i) exemption because, *inter alia*, (1) the business does not qualify as a retail establishment; (2) numerous class members did not receive 1.5 times the federal minimum wage for all hours worked in workweeks; and (3) Defendant's piece rate compensation does not qualify as a "commission".

With respect to the fact TRT unequivocally fails to qualify as a retail or service establishment, TRT exclusively services commercial customers and repairs furniture in bulk, i.e. it is not open to the general consuming public[57] and it does not dispose of its services in retail quantities as required to qualify as a retail or service establishment. See 29 C.F.R. §§ 779.411 ("A business qualifies as a "retail or service establishment" if 75 percent of its annual dollar volume of sales of goods or services

_____

[57] See *Jackson v. Airways Parking Co*., 297 F. Supp. 1366, 1969 U.S. Dist. LEXIS 13377 (ND Ga Mar. 7, 1969) ("The court must take retail in its common and ordinary parlance. The regulations admonish the court that to be considered within the exemption, an establishment must be open to the general public. As the regulations state, a business will not be considered a retail or service establishment within the meaning of the Fair Labor Standards Act if it is not ordinarily available to the general consuming public."); 29 C.F.R. §779.318 (Identifying distinguishing characteristics of retail or service establishment as "one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.").

(or of both) is not for resale **and is recognized as retail sales or services in the particular industry**.”). The Regulations further distinguish the nature of wholesale services, which do not qualify as retail sales/services for purposes of the 207(i) exemption. 29 C.F.R. § 779.328 (a), (b) (“Typically, retail sales are made to the general consuming public. The sales are numerous and involve small quantities of goods or services. Wholesale establishments usually exclude the general consuming public as a matter of established business policy and confine their sales to other wholesalers, retailers, and industrial or business purchasers in quantities greater than are normally sold to the general consuming public at retail.”…(b) In some cases, a purchaser contracts for the purchase of a large quantity of goods or services to be delivered or performed in smaller quantities or jobs from time to time as the occasion requires. In other cases, the purchaser instead of entering into a single contract for the entire amount of goods, or services, receives a series of regular deliveries of performances pursuant to a quotation, bid, estimate, or general business arrangement or understanding. In these situations, **if the total quantity of goods or services which is sold is materially in excess of the total quantity of goods or services which might reasonably be purchased by a member of the general consuming public during the same period, it will be treated as a wholesale quantity for purposes of the statutory definition of the term "retail or service**

**establishment", in the absence of clear evidence that under such circumstances such a quantity is recognized as a retail quantity in the particular industry**.").

Here, the putative class exclusively worked large commercial projects involving the repair of wholesale amounts of furniture repair/refinishing, which cannot be reasonably described as retail services. Moreover, the Regulations expressly provide that "Sales made pursuant to formal bid procedures, such as those utilized by the agencies of Federal, State, and local governments and oftentimes by commercial and industrial concerns involving the issuance by the buyer of a formal invitation to bid on certain merchandise or services for delivery in accordance with prescribed terms and specifications, are not recognized as retail sales." As TRT concedes, part of its furniture repair/refinishing business involves "[g]overnment facilities".[58]

Finally, TRT is in the business of providing tradesmen or, as it refers to the workers, "craftsmen" (Exhibit B, at Crawford00118), which is one of the types of businesses expressly enumerated by the Regulations as "lacking a retail concept" for purposes of the 207(i) exemption. See 29 C.F.R. § 779.317 ("Partial list of establishments lacking "retail concept."…[includes] "special trade contractors (construction industry)").

---

[58] (Exhibit B, at Crawford00095).

Next, Defendant cannot reasonably contend that its piece rate compensation constituted commissions. As Defendant admits, Plaintiff was paid "on the basis of actual items completed", i.e. on a piece rate basis.[59] Finally, Defendant cannot demonstrate that it paid class members 1.5 times the federal minimum wage for all hours worked in workweeks.

The primary method for calculating overtime due to piece rate workers is set forth below:

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week. For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week. Thus, for example, if the employee has worked 50 hours and has earned $ 491 at piece rates for 46 hours of productive work and in addition has been compensated at $ 8.00 an hour for 4 hours of waiting time, the total compensation, $ 523.00, must be divided by the total hours of work, 50, to arrive at the regular hourly rate of pay--$ 10.46. For the 10 hours of overtime the employee is entitled to additional compensation of $ 52.30 (10 hours at $ 5.23). For the week's work the employee is thus entitled to a total of $ 575.30

---

[59] (Dkt. Entry 14, p. 9, ¶ 21).

(which is equivalent to 40 hours at $ 10.46 plus 10 overtime hours at
$ 15.69).

29 C.F.R. § 778.111.

As described herein as Sec. II(B), the putative class was paid solely on a piece

rate basis for the work they completed. For example, on an Alpharetta, Georgia job,

opt-in plaintiff Byrd worked on sectional sofas and ottomans and was paid a piece

rate of $22 for the work he performed on the ottomans, and a piece rate of $81 for

sectional sofas, regardless of whether he was performing such work after having

already worked 40 hours in the workweek. If Byrd's piece rate was $22 for

completing an ottoman, he would receive that piece rate amount multiplied by the

number of ottomans he completed in the week, without any regard to the number of

hours he worked in the week.[60] For example, if Byrd completed 20 ottomans in the

week, at a piece rate of $22, he would be paid $440, regardless of whether it took him

40 hours or 70 hours to complete the work.[61]  In other words, there was no premium

paid for overtime hours.[62] Plaintiff and three opt-in plaintiffs aver to Defendant's

universal pay practice of paying piece rate compensation to the class of furniture

repairers, without an overtime premium for overtime hours.[63]

### 3. OTHER FURNITURE REPAIRERS WISH TO JOIN PLAINTIFF'S ACTION

---

[60] (Byrd Decl,, ¶ 9).
[61] (Byrd Decl,, ¶ 9).
[62] (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).
[63]  (Crawford Decl. ¶¶ 9, 10; (Byrd Decl,, ¶¶ 9, 10); (Prosser Decl., ¶¶ 9, 10); (MuKunta Decl., ¶¶ 9, 10).

Since Crawford filed this action on August 27, 2015, three other furniture repairers have filed their "opt-in" consent to join Plaintiff's action[64] Additionally, at any given time Defendant employs approximately 40-50 furniture repairers that are retained by Defendant out of its Alpharetta, Georgia office, i.e. the proposed class is relatively small and confined to a business that has one physical office.[65] Additionally, Crawford and opt-in plaintiff William Byrd aver to their personal knowledge that other class members would join the action if provided Notice of the suit from the Court.[66] *Compare with*:

> *Alexander v. Cydcor, Inc*., 2012 U.S. Dist. LEXIS 187258, 11-14 (N.D. Ga. Apr. 5, 2012) (Judge Jones) (Granting first stage collective action certification and, with respect to the plaintiff's showing of additional employees that wish to join, the Court found that interest was demonstrated by three putative class members filing their consent to join, along with declarations averring that other class members had expressed interest in joining).

> *Brown v. Refuse Materials, Inc.*, 7:13-cv-37(HL), 2013 WL 2387750 (M.D. Ga. 2013) (*quoting v. Santiago v. Mid-South Painting, Inc.*, 2011 U.S. Dist. LEXIS 85252, 11-12 (S.D. Fla. 2011) (granting conditional certification where one employee had opted-in and opining "courts within this circuit have determined that evidence of a common payroll policy or scheme is sufficient to establish[ ] there [are] other employees desiring to opt in");

---

[64] [Doc. 3-1 – William Byrd's Consent to Join]; [Doc. 8-1 – Justin Prosser's Consent to Join]; [Doc. 12 – Jonathan MuKunta's Consent to Join].
[65] (Crawford Decl., ¶¶ 5).
[66] (Crawford Decl., ¶ 19); (Byrd Decl., ¶ 16).

*Santiago v. Mid-South Painting, Inc.*, 2011 U.S. Dist. LEXIS 85252, 11-12 (S.D. Fla. 2011) (granting conditional certification where plaintiff presented only his own affidavit and no putative class members had opted-in the court recognized that that "courts within this circuit have determined that evidence of "a common payroll policy or scheme" is sufficient to establish there are other employees desiring to opt-in") (internal quotations, brackets and citations omitted);

*Wynder v. Applied Card Sys.*, 2009 U.S. Dist. LEXIS 100596, 7-8 (S.D. Fla. 2009) (granting conditional certification based on Plaintiff's and one co-worker's declarations and noting that the "putative plaintiffs are similar in that they are allegedly non-exempt employees working at the Boca Raton office, performing similar tasks, and suffering from the same alleged payment practices");

*Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 U.S. Dist. LEXIS 58484, 2006 WL 2290512, at * 4 (S.D. Fla. 2006) (granting conditional certification where one individual had sought to opt-in the court opined that the "Affidavit of [single opt-in] shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation");

*Heath v. Hard Rock Café Int'l, Inc.*, 2010 U.S. Dist. LEXIS 107440 (M.D. Fla. 2010) (the court noted that "if a plaintiff provides an affidavit or consent to join the case by at least one other similarly situated individual, courts will ordinarily conditionally certify the collective action");

*Passiatore v. Fla. Neurological Ctr. LLC*, 2011 U.S. Dist. LEXIS 103931, 7-8 (M.D. Fla. 2011) (granting conditional certification based on declaration of plaintiff and one opt-in plaintiff).

Plaintiff has met his burden to show that there are other employees interested in joining Plaintiff's action.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant Plaintiff's motion for conditional collective action certification and (1) Order Defendant to provide a list of all putative class members, including first and last name, last-known  address and phone number, Email address, dates of employment, last four digits of social security number and date of birth; and (2) permit Plaintiff to provide putative class members with the proposed Notice of this Action, attached hereto as "Exhibit F", and Consent to Join form, attached hereto as "Exhibit G".

Respectfully submitted,

This 10th day of November, 2015.

By:  s/V. Severin Roberts
V. Severin Roberts
Georgia Bar No. 940504

**BARRETT & FARAHANY, LLP**
1100 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309
(404) 214-0120

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Plaintiff Floyd Crawford's Memorandum in Support of Motion for Conditional Collective Action Certification and Issuance of Notice to Putative Class Members** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 10th day of November, 2015.

By:  s/V. Severin Roberts
V. Severin Roberts
Georgia Bar No. 940504

BARRETT & FARAHANY, LLP
1100 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309