IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FLOYD CRAWFORD, individually and on behalf of others similarly situated; WILLIAM BYRD; JUSTIN PROSSER; JONATHAN MUKUNTA;<br><br>Plaintiffs,<br><br>v.<br><br>THE REFINISHING TOUCH, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br>1:15-CV-3027-SCJ |

## ORDER

This matter appears before the Court on Plaintiffs' Motion for Conditional Collective Action Certification and Issuance of Notice to Putative Class Members. Doc. No. [20]. Defendant is a Georgia company that provides furniture repair and upholstering services to commercial clients. Doc. No. [1], pp. 2, 4, ¶¶4, 11. Plaintiff Floyd Crawford brings this suit on behalf of himself and others similarly situated for Defendant's failure to pay overtime wages for hours worked in excess of 40 hours per week, in alleged violation of the Fair Labor Standards Act ("FLSA"). Id. pp. 9–10, ¶¶35–44. Under § 216(b) of the FLSA, one or more employees on behalf of themselves and other similarly situated employees may bring a collective action to recover their

AO 72A
(Rev.8/82)

unpaid wages or unpaid overtime compensation. Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71 (1989); see also 29 U.S.C. § 216(b). The Eleventh Circuit has adopted a two-stage analysis to evaluate whether certification for a collective action is proper, and whether notice should be issued. Hipp v. Liberty Nat'l. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001). At the initial stage— "the notice stage"—the Court must decide, based only on the pleadings and supporting affidavits, whether notice should be given to potential class members. Id. If the Court conditionally certifies the class, putative members are given notice and the opportunity to opt-in and the parties are allowed to conduct discovery. Id.

At some point towards the end of, or after, discovery the defendant can initiate the second stage by filing a motion for decertification. The Court is able to make the fact specific determination whether the plaintiffs are truly similarly situated only at this second stage because the Court "has much more information on which to base its decision." Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007). At the notice stage, a court need not determine the merits of a plaintiff's complaint or resolve the parties' factual disputes. See Grayson v. K Mart Corp., 79 F.3d 1086, 1099 n. 17 (N.D. Ga. 1996); Garner v. G.D. Searle Pharm. & Co., 802 F.Supp. 418, 423 nn. 3, 4 (M.D. Ala. 1991) ("The court is not required, nor would it be well-advised, to

adjudicate this case on its merits before resolving the issue of class notification. A primary purpose of notification is to locate other similarly situated employees who may wish to bring their claims to the court's attention before this litigation is resolved."). Because the Court has only minimal evidence to rely upon at this point, the Court applies a "fairly lenient standard" that typically results in conditional certification. Hipp, 252 F.3d at 1218.

For conditional certification, Plaintiffs must show a reasonable basis for their claim that there are similarly situated employees who should be notified by demonstrating that: (1) there are current or former employees who desire to opt-in, and (2) those employees are similarly situated to Plaintiffs with respect to their job requirements and pay provisions. Dybach v. Fla. Dep't of Corrs., 942 F.2d 1562, 1567–68 (11th Cir. 1991). Plaintiffs only need to show that their "positions are similar, not identical, to the positions held by putative class members." Hipp, 252 F.3d at 1218. "The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008).

Although disputed by Defendant, the first Dybach requirement is easily met—Plaintiffs have demonstrated that there are current or former employees who

3

wish to opt-in. There is no bright-line rule for how many plaintiffs, or what percent of the proposed class, a plaintiff must show are willing to opt-in. Nevertheless, this Court has held that a lower percentage of plaintiffs from the putative class met the first Dybach requirement. In Alexander v. CYDCOR, Inc., 2012 WL 1142449 (N.D. Ga. Apr. 6, 2012), this Court held that the plaintiffs had shown that current or former employees wished to opt-in because "roughly 8% to 10% of the potential class has already expressed an interest to join." Id. at at *3.

Here, Plaintiff Crawford's affidavit establishes that Defendant utilizes approximately 40–50 furniture repairers, and six other furniture repairers have already filed opt-in consents. See Doc. No. [20-2], pp. 2–3, ¶5; see also Doc. Nos. [3-1], [8-1], [12], [21-1], [36-1], [40-1]. Thus, roughly 15% of the potential class has already expressed an interest in joining this suit. Other courts in this Circuit have held that the first Dybach requirement is met when fewer plaintiffs expressed interest in joining the suit. See e.g., Riddle v. Sun Trust Bank, 2009 WL 3148768, at *3 (N.D. Ga. 2009) (holding three opt-in plaintiffs provided sufficient interest to conditionally certify a collective action); Pendlebury v. Starbucks Coffee Co., 2005 WL 84500, at *3 (S.D. Fla. Jan.3, 2005) (finding sufficient interest for a nationwide class based on affidavits by five employees). Thus, the Court concludes that Plaintiffs have demonstrated that there are potential plaintiffs who desire to opt-in.

Most of Defendant's arguments against conditional certification center on the second <u>Dybach</u> requirement—that the plaintiffs be similarly situated with respect to their job requirements and pay provisions. See <u>Dybach</u> 942 F.2d at 1567-68; Doc. No. [32], pp. 9-15. The crux of Defendant's arguments is that "each project [furniture repairers work on] is unique with respect to the type of work required and the policies and procedures implemented by the customer to manage the subcontractors." Doc. No. [32], pp. 10-11. Plaintiffs bear the burden of showing a "reasonable basis" for determining that they are similarly situated. <u>Hipp</u>, 252 F.3d at 1219. This burden "is not heavy," and may be met by "detailed allegations supported by affidavits which successfully engage [Defendnat's] affidavit[ ] to the contrary." <u>Id.</u> Plaintiffs meet this burden.

While Defendant characterizes the putative class as a "nationwide class," Plaintiffs successfully engage Defendant's assertions with their own detailed affidavits. <u>See</u> Doc. No. [32], p. 10. The furniture repairers sometimes work in other cities, but they operate out of Defendant's business location in Alpharetta, Georgia and perform work around the Atlanta metropolitan area. <u>See</u> Doc. No. [20-2], p. 2, ¶4. Likewise, Plaintiffs rejoin Defendant's assertion that each project was unique by identifying crucial commonalities. In their affidavits, Plaintiffs aver that Defendant subject them to daily supervision, assigned them job duties and work schedules, and

provided them with the tools to complete their jobs. Doc. No. [20-2], pp. 3, 4, ¶¶7, 14; Doc. No. [20-4], p. 2, ¶7; Doc. No. [20-5], p. 2, ¶7. Plaintiffs also assert that they did not hire or fire subcontractors, that they performed work essential to Defendant's business, that they had no opportunity for profit or loss, and that they were economically dependant on Defendant. Doc. No. [20-2], p. 4, ¶¶11–15; Doc. No. [20-4], p. 4, ¶¶11–15; Doc. No. [20-5], p. 4, ¶¶11–15. Defendant hotly contests these allegations, but the Court will not resolve such factual disputes at the notice stage. See Grayson, 79 F.3d at 1099 n. 17; Garner, 802 F.Supp. at 423 nn. 3, 4. Plaintiffs meet their burden by simply providing "detailed allegations supported by affidavits which successfully engage [Defendnat's] affidavit[ ] to the contrary." Hipp, 252 F.3d at 1219.

More important than these disputed facts are the facts that are undisputed. Defendant admits that the putative class is made up of workers who perform "furniture repair and refinishing work" and are paid at a based on "the number of units they complete." See Doc. No. [32-1], pp. 3, 5, ¶¶7, 14. Plaintiffs' theory of recovery is that they are employees within the meaning of the FLSA, and thus were entitled to time-and-a-half overtime compensation, which they did not receive because they were paid at a per unit rate. See Doc. No. [1], pp. 7–10, ¶¶25–44. This is a uniform theory of recovery. Plaintiffs do not, for example, contend they are

AO 72A
(Rev.8/82)

entitled to overtime compensation based on varied allegations such as "an instruction not to record time actually worked, or a requirement that work be performed during scheduled breaks or after hours." Reed v. Mobile Cty. Sch. Sys., 246 F. Supp. 2d 1227, 1233 (S.D. Ala. 2003). Defendant's speculation that some workers may not have worked more than 40 hours a week cannot defeat conditional certification. Only after discovery has been completed can the Court determine if the plaintiffs who opt-in are truly similarly situated.

Plaintiffs have met their burden for conditional certification and sending notice to the putative class. They have sufficiently demonstrated that there are other workers who desire to opt-in, and that those employees are similarly situated to with respect to their job requirements and pay provisions. See Dybach, 942 F.2d at 1567–68.[1] The remaining question is what form the notice will take. Defendant begins by asking "the Court [to] order the parties to meet and confer and jointly prepare an accurate and balanced notice," and then proceeds to delve into a laundry-list of issues it has with Plaintiffs' proffered notice. See Doc. No. [32], pp. 17–19. While the parties

---

[1] Defendant also argues that, if the Court conditionally certifies a class, the class should be limited to only those workers who worked on the exact same projects as Plaintiff Crawford. Doc. No. [32], pp. 16–17. The Court rejects this argument. All of the workers, regardless of which project they worked on, were paid on a per unit basis and performed the same general work—furniture repair and upholstery. At the notice stage, the Court will not delve into the minutiae of different supervisory techniques used on different projects, especially since this is a contested factual issue.

are, of course, encouraged to confer and resolve issues amicably among themselves, the Court will address each of the issues raised by Defendant.

Defendant first contends that using the case caption at the top of the notice should be removed lest a recipient "mistakenly believe that the Court approves the action and is not impartial." Id. p. 17. This could be problematic, except for the fact that the notice expressly states:

> **THE COURT HAS NOT YET EXPRESSED ANY OPINION ABOUT THE MERITS OF THE CLAIMS ASSERTED OR THE DEFENSES RAISED, AND YOU SHOULD NOT INTERPRET THE SENDING OF THIS NOTICE AS ANY INDICATION OF THE COURT'S OPINION OF THE ULTIMATE OUTCOME OF THIS CASE.**

Doc. No. [20-7], p. 3 (emphasis in original). The Court believes this to be sufficient to prevent any possible recipient from having a mistaken belief that the Court is not impartial.

Defendant next contends that "[d]efense counsel's name and contact information should be included in the interest of full disclosure." Doc. No. [32], p. 17. The recipients need only know the contact information of their potential counsel—Plaintiffs' counsel. Allowing the request could potentially confuse the recipients as to who will represent them. Indeed, Georgia's Code of Professional Conduct expressly prohibits defense counsel from speaking about the case with these

individuals once they are represented, unless defense counsel receives permission from Plaintiffs' counsel. Ga. Code Prof'l Conduct R. 4.2(a). The Court denies the request for defense counsel's name and contact information to be included.

Defendant also wants the notice to inform recipients that they "may have to respond to discovery, sit for depositions, and/or testify in court." Doc. No. [32], p. 17. This Court has held that such language "is unnecessarily strong and could thus chill potential opt-in participation." See Alexander, 2012 WL 1142449 at *20–21. However, the notice currently lacks any language indicating that the potential plaintiffs may be required to provide information or otherwise participate in the action, if they choose to opt-in. See Doc. No. [20-7]. Plaintiffs must include some language to this effect in the notice.

Defendant objects to Plaintiffs' "request to obtain the birth dates and last four digits of social[-]security numbers of the putative class as an unwarranted and unnecessary invasion of privacy." Doc. No. [32], p. 18. The Court recognizes that Plaintiffs need some way of ensuring the identity of the potential class members. The Court will grant Plaintiffs' request to obtain the birth dates and last four digits of social-security numbers of the putative class members. The Court further orders that, in order to address the privacy concerns, the parties will submit a proposed protective order to the Court within 30 days of this Order. However, the Court will

not allow Defendant "to inform the class members that disclosure [of the information] was ordered on Plaintiff[s'] request and over [Defendant's] objection." Doc. No. [32], p. 18. The Court cannot possibly imagine what legitimate purpose would be served by such a comment. Finally, the Court will require Plaintiff to send the notices by first-class mail, but will not grant Defendant's request to thereafter prevent Plaintiffs' counsel from having any further communications with the potential plaintiffs. See id. pp. 18–19.

For the foregoing reasons, Plaintiffs' Motion for Conditional Collective Action Certification and Issuance of Notice to Putative Class Members (Doc. No. [20]) is **GRANTED**. Accordingly, the § 216(b) class is **CONDITIONALLY CERTIFIED** and **NOTICE SHALL BE GIVEN** to other potential class members.

IT IS SO ORDERED, this 1st day of July, 2016.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)